**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**BRANDON JOHNSON,**

      **Petitioner,**

**v.**                                             **Civil Action No. 3:13cv133**
                                                    **(Judge Groh)**

**MARVIN C. PLUMLEY, Warden,**

      **Respondent.**

## REPORT & RECOMMENDATION

## I. INTRODUCTION

On September 23, 2013, Brandon Johnson ("Johnson") filed a petition under 28 U.S.C. § 2254 challenging his state court conviction in Ohio County, West Virginia. On October 7, 2013, Johnson paid the required filing fee, and on October 10, 2013, Respondent was ordered to show cause why the petition should not be granted. On December 15, 2013, Respondent filed a Motion for Summary Judgment (Doc. 15) and the Court issued a <u>Roseboro</u> Notice[1] to inform Johnson of his right to file responsive material. On January 13, 2014, Johnson filed a Response to the Motion for Summary Judgment. Accordingly, this matter is now ripe for the Court's review.

## II. THE STATE CONVICTION & REVIEW

**A.      The 2002 Ohio County Conviction**

On December 11, 2001, the Circuit Court of Ohio County considered Motions of the State of West Virginia regarding whether Johnson should be transferred to the adult status of the court

---

[1] Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975).

based on information accusing Johnson of: (1) Brandishing a Weapon; (2) Wanton Endangerment; and (3) First degree Robbery with the Use and Presentation of a Firearm. On or about January 14, 2002, Johnson was indicted for the felony offense of Robbery in the First Degree with the Use and Presentment of a Firearm in violation of W.Va. Code § 61-2-12(a). On January 17, 2002, the Circuit Court of Ohio County granted the State's Motion to Transfer Juvenile to Adult Jurisdiction based on one felony count of First Degree Robbery with the Use and Presentment of a Firearm. On April 4, 2002, Johnson was found guilty by a petit jury for the felony offense of First Degree Robbery with the Use and Presentment of a Firearm. On May 7, 2002, the Circuit Court of Ohio County sentenced Johnson, then seventeen years old, to forty-eight (48) years for his robbery conviction. (Doc. 15-5, pp. 5-6).

**B    Direct Appeal**

Johnson, through counsel, appealed his conviction to the West Virginia Supreme Court of Appeals ("WVSCA") on August 21, 2002.  He raised the following two issues in his direct appeal:

1.    Whether the trial court erred when it refused to allow the admission of evidence of crack cocaine use by the victim during the over twelve hours between the time of the robbery and the time the victim sought medical attention.

2.    Whether the trial court erred in imposing the sentence considering there was no evidence the defendant (a juvenile transferred to adult status) fired any shots at the victim.

(Doc. 15-1, pp. 8-9).   On May 6, 2003, the WVSCA affirmed Johnson's conviction. (Doc. 15-2)

**C.    State Habeas Proceedings**

Johnson's first petition for state habeas relief was filed *pro se* on August 3, 2004, in the Circuit Court of Ohio County. He claimed the following grounds for relief:

1.    Johnson's sentence of forty-eight years was grossly excessive in violation

of Article III, Section Five of the W,Va. Constitution.

2.      Johnson's trial counsel was ineffective for failing to fully investigate and not interviewing a potential witness.

(Doc. 15-3).  The Circuit Court denied that petition the day after it was filed. (<u>Id.</u>).

Eleven months later, Johnson filed a second state court habeas petition on July 13, 2005, asserting seven additional claims:

1.      Was Johnson denied his Constitutional right to "Meaningful" habeas corpus review and habeas corpus appeal by the absence of the circuit court's making of findings of fact and conclusions of law or holding hearing(s) or appointing counsel in direct violation of W.Va. Constitution Article III, §§ 10, 14, 17 mandating review of this habeas corpus?

2      Did the trial court abuse its discretion by failing to inform Johnson of his right to testify, on record, with procedural safeguards required for waiver of his right to testify in direct violation of West Virginia Constitution, Article III, §§ 10 and 15, and in light of Johnson's age extreme prejudice, resulted thus denying him the right to a fair trial with reliable results?

*3.*      Was the sentence of forty-eight years disproportionate and based upon impermissible sentencing factors creating an abuse of discretion by the court in direct violation of West Virginia Constitution, Article III, § 10 constituting cruel and unusual punishment in derogation of West Virginia Constitution, Article III, § 5 mandating vacation of sentence and a new sentencing hearing and sentence?

4.      Was the testimony of Todd McAllister (the alleged victim) so inherently incredible as to invalidate the verdict, where the testimony defies known laws of physics, and where this person's testimony was the sole testimony for the founding of conviction, which denied Johnson the right to a fair trial with reliable results in derogation of West Virginia Constitution, Article III, § 10 mandating reversal of conviction and vacation of sentence?

*5.*      Did the assistant prosecutor commit an abuse of discretion and commit prosecutor misconduct by impermissibly vouching for the credibility of Todd McAllister during closing argument, resulting in denial of due process and equal protection of the law, and a trial with reliable results in direct violation of West Virginia Constitution, Article III, § 10 mandating reversal of conviction and vacation of sentence?

6.     Was Johnson denied effective assistance of counsel, pre-trial, at trial, and other times, which fell well below the standard expected of reasonably competent criminal Law attorneys as guaranteed by West Virginia Constitution, Article III, § 14 which resulted in a denial of due process and equal protection West Virginia Constitution, Article III, § 10 and a trial without reliable results mandating reversal of conviction and vacation of sentence?

7.     Johnson has requested the appointment of counsel, preceding as an indigent for this petition for writ of habeas corpus and does hereby preserve the right to assign additional errors as gleaned from the record, upon the appointment of counsel and his/her review and advice. Syl. Pt. 3, Billotti v. Doddrill, 183 W.Va. 48, 394 S.E. 2d 32 (1990).

(Doc. 15-4). The circuit court denied that petition on the same day it was filed. (Id.) Johnson filed

a Notice of Intent to Appeal in the Circuit Court on July 21, 2005. However, the circuit court entered

a Dismissal Order on February 3, 2009, noting that the time to appeal the July 13, 2005 order had

expired. (Id.)

On May 7, 2012,[2] Johnson filed his third state habeas petition, claiming the following

grounds for relief:

1.     The trial court violated his due process rights when the court diminished the burden of proof by advising the jury that "whether the Defendant, Brandon Johnson, in this case actually wish to rob Tom McAllister is irrelevant."

2.     Counsel was ineffective for failing to impeach the victim (Todd McAllister) with his prior inconsistent statements.

---

[2]On August 19, 2003, Johnson filed a motion for correction of sentence. The circuit court, however, did not rule of that motion until August 29, 2012, when the motion was denied. Pursuant to the holding in *Wahl v.Khali*, 131 S.Ct. 1278, 1287 (2011), a motion to reduce a sentence seeks collateral relief, and thus triggers the tolling provision of 28 U.S.C. § 2244(d)(2). Therefore, the Johnson's one-year statute of limitations was tolled from August 19, 2003, until July 8, 2013 when the WVSCA affirmed the denial of his third habeas petition. Accordingly, Johnson's federal habeas petition, filed on September 23, 2013, is timely despite the fact that his conviction became final on, or about, August 6, 2003.

4

3.      Johnson's right to due process was violated when the trial court
        relied on constitutionally insufficient evidence to convict him in violation
        of <u>Jackson v. Virginia</u>.

4.      Counsel was ineffective for failing to offer an instruction on the lesser
        included offense of larceny in light of the evidentiary dispute on the issue
        of whether Johnson "placed the victim in fear with the use of a firearm"
        during the alleged robbery.

5.      Counsel was ineffective for failing to object to the Court's failure to
        transcribe the record for the purpose of review on appeal and collateral
        attack of his conviction.

(Doc. 15-5). The circuit court denied that petition on August 28, 2012. (<u>Id.</u)..

On September 21, 2012, Johnson filed a timely but incomplete notice of appeal to the WVSCA. The WVSCA entered a scheduling order directing Johnson to perfect his appeal by December 31, 2012. On November 13, 2012, Johnson perfected his appeal asserting the following assignments of error:

1.      The trial court violated his due process rights when the court diminished
        the burden of proof by advising the jury that "whether the Defendant,
        Brandon Johnson, in this case actually wish to rob Todd McAllister is
        irrelevant." The habeas court's decision which found this claim to be
        meritless is clearly wrong.

2.      Counsel was ineffective for failing to impeach the victim with his prior
        inconsistent statements made to state officials prior to trial. The habeas
        court's decision which found this claim to be meritless was clearly wrong.

3.      Johnson's right to due process was violated when the trial court
        relied on constitutionally insufficient evidence to convict him in violation
        of <u>Jackson v. Virginia</u>. The habeas court's decision which found this claim
        to be meritless was clearly wrong.

4.      Counsel was ineffective for failing to offer the instruction on the lesser
        included offense of larceny. The habeas court's decision which found this
        claim to be meritless was clearly wrong

5.      The habeas court abused its discretion when it failed to appoint counsel

and holding a hearing, in order to develop the record on Johnson's multiple claims of ineffective assistance of counsel and others serious constitutional issues which needed factual development.

6.  The trial court denied Johnson due process and equal protection of law by failing to make a ruling on Johnson's Rule 35(b) motion which has been pending before the Court since 2003.

(Doc. 15-6). On July 8, 2013, the WVCSA affirmed the circuit court's ruling in a memorandum decision.

## III. FEDERAL HABEAS PETITION

On September 23, 2013, Johnson filed his federal habeas petition, asserting the following grounds for relief:

1.  The court lower the burden of proof by instructing the jury that Johnson did not have to have same criminal intent as the main perpetrator of the robbery.

2.  Counsel was ineffective for failing to impeach a witness with inconsistent statements.

3.  There was insufficient evidence to support a conviction

4.  Counsel was ineffective for failing to offer lesser included offense of larceny when a factual dispute developed over whether Johnson had a gun or not.

5.  Counsel was ineffective for failing to object to the Reporter's failure to transcribe the entire record for the purpose of review on direct appeal.

## IV. STANDARD OF REVIEW

### A.  <u>Summary Judgment</u>

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases.  <u>See</u> <u>Blackledge v. Allison</u>, 431 U.S. 63, 80 91977).  So too, has the Fourth Circuit Court of Appeals.  <u>Maynard v. Dixon</u>, 943 F.2d 407 (4th Cir. 1991).  Pursuant to Rule 56c

of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. <u>Miller v. Federal Deposit Ins. Corp.</u>, 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242-252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." <u>Id.</u> "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." <u>Felty v. Graves-Humphreys Co.</u>, 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. <u>Anderson</u>, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. <u>Matsushita Elec. Industrial Co. V. Zenith Radio Corp.</u>, 475 U.S. 574, 587-88 1986).

## B. <u>Federal Habeas Review Under 28 U.S.C. § 2254</u>

Notwithstanding the standards which govern the granting of a motion for summary judgment, the provisions of 28 U.S.C. § 2254 must be examined to determine whether habeas relief is proper. Title 28 U.S.C. § 2254 requires a district court to entertain a petition for habeas corpus relief from a prisoner in State custody, but "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(q). Regardless, "[a]n

application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State Court shall not be granted unless it appears that...the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). However, the federal court may not grant habeas relief unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C. § 2254(d)(1) and (2); see also Williams v. Taylor, 529 U.S. 362 (2000).

The Fourth Circuit Court of Appeals has determined that "the phrase 'adjudication on the merits' in section 2254(d) excludes only claims that were not raised in state court, and not claims that were decided in state court, albeit in a summary fashion." Thomas v. Taylor, 170 F.3d 466, 475 (4th Cir. 1999). When a state court summarily rejects a claim and does not set forth its reasoning, the federal court independently reviews the record and clearly established Supreme Court law. Bell v. Jarvis, 236 F.3d 149 (4th Cir.), cert. denied, 524 U.S. 830 (2001)(quoting Bacon v. Lee, 225 F.3d 470, 478 (4th Cir. 2000)). However, the court must still "confine [its] review to whether the court's determination 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" Id. at 158.

A federal habeas court may grant relief under the "contrary to" clause if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts."

Williams, 529 U.S. at 413. A federal Court may grant a habeas writ under the "unreasonable application" clause, "if the state court identifies the correct governing legal principle from the Court's decision but unreasonably applies that principle to the facts of the prisoner's case." Id. "An unreasonable application of federal law is different from an incorrect application of federal law. Id. at 410.

When a petitioner challenges the factual determination made by a state court, "federal habeas relief is available only if the state court's decision to deny post-conviction relief was 'based on an unreasonable determination of the facts.'" 28 U.S.C. § 2254(d)(2). In reviewing a state court's ruling on post-conviction relief, we are mindful that 'a determination on a factual issue made by a State court shall be presumed correct,' and the burden is on the petitioner to rebut this presumption 'by clear and convincing evidence.'" Tucker v. Ozmint, 350 F.3d 433, 439 (4th Cir. 2003).

However, habeas corpus relief is not warranted unless the constitutional trial error had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993); Richmond v. Polk, 375 F.3d 309 (4th Cir. 2004). "Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" Brecht, supra.

## V. DISCUSSION

### A. Exhaustion of State Court Remedies

A petition for a writ of habeas corpus is not a substitute for pursuing state judicial remedies. See 28 U.S.C. §2254(b). Therefore, a petition for writ of habeas corpus should not be entertained unless the petitioner has first exhausted his state remedies. Baldwin v. Reese, 541 U.S. 27, 29

(2004); Castille v. Peoples, 489 U.S. 346, 349, *reh'g denied*, 490 U.S. 1076 (1989). Concerns of comity dictate that the State must first be afforded a full and fair opportunity to pass upon and correct the alleged violation of its prisoners' federal rights. See Duncan v. Henry, 513 U.S. 364, 365 (1995); see also Footman v. Singletary, 978 F.2d 1207, 1210-11 (11th Cir. 1992) (comity requires that the State be given the first opportunity to address and resolve the merits of an inmate's claims). To exhaust state remedies, a habeas petition must fairly present the substance of his claim to the state's highest court. Matthews v. Evatt, 105 F.3d 907 (4th Cir.), cert. denied, 522 U.S. 833 (1997). "A claim is fairly presented when the petitioner presented to the state courts the substance of his federal habeas corpus claim. The ground relied upon must be presented face-up and squarely; the federal question must be plainly defined." Id. at 911. "A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief . . . by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" Baldwin v. Reese, 541 U.S. at 32; see also Howell v. Mississippi, 543 U.S. 440, 444, 125 S.Ct. 856, 859 (2005).

In West Virginia, the exhaustion of state remedies is accomplished by a petitioner raising the federal issue on direct appeal from his conviction or in a post-conviction state habeas corpus proceeding followed by an appeal to the West Virginia Supreme Court of Appeals. See Moore v. Kirby, 879 F. Supp. 592, 593 (S.D. W.Va. 1995); see also Bayerle v. Godwin, 825 F. Supp. 113, 114 (N.D.W.Va. 1993). A federal court may only consider those issues the petitioner presented to the state court,[3] and "[a]n applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State

---

[3] Picard v. Connor, 404 U.S. 270 (1971).

to raise, by any available procedure, the question presented."  28 U.S.C. § 2254(c).

In addition, it is the petitioner's burden to demonstrate that he has exhausted his state judicial remedies.  Breard v. Pruett, 134 F.3d 615, 619 (4th Cir.), cert. denied, 523 U.S. 371 (1998). "The exhaustion requirement is not satisfied if the petitioner presents new legal theories or factual claims for the first time in his federal habeas petition." Id.  "If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners  are asserting claims under the United States Constitution.

As his first ground for dismissing this action, Respondent notes in the pending § 2254 petition, Johnson raises the same five grounds that were contained within his May 7, 2012, state habeas petition.  After the circuit court denied the petition, Johnson appealed to the WVSCA but only raised four of the five grounds he asserted in the circuit court. Specifically, Respondent notes that Johnson never presented Ground Five – the issue of whether his trial counsel was ineffective for failing to object to the court reporter's failure to transcribe the entire record for purposes of review – to the West Virginia Supreme Court of Appeals. Furthermore, as noted by Respondent, Johnson did not present this claim to the state high court in his direct appeal. Therefore, Respondent concludes, appropriately, Johnson has not properly exhausted Ground Five.

When a petition contains both exhausted an unexhausted claims, the petition is "mixed" and must either be dismissed in its entirety, or a petitioner must sever the unexhausted claims. Rose v. Lundy, 455 U.S. 509, 511 (1982).  In his response to Respondent's Motion for Summary Judgment, Johnson acknowledges that Ground Five has not been exhausted. Johnson further notes after raising Ground Five in his habeas petition in the circuit court, he did further review and research and determined that the issue might become a distraction if raised in his habeas appeal to the WVSCA.

Johnson further maintains that it was his intention to drop Ground Five, but when filling out the form for his § 2254, he failed to recall that Ground Five had been dropped. Accordingly, Johnson "asks the court to dismiss unexhausted Ground Five and to continue the litigation of his fully exhausted claims which are included in the current federal petition." (Doc. 21, p. 2). In making this request, Johnson asserts that he is aware of the risk that continuing with the exhausted claims will likely bar him from seeking review of the unexhausted claim. Despite this risk, he asks the Court to "simply disregard or otherwise dismiss Ground Five from his current petition and allow [him] to continue on the remaining claims listed in Grounds One through Four of the current federal habeas corpus." (Id.).

In light of Johnson's acknowledgment that Ground Five is unexhausted, and his apparent understanding of the likely consequences of proceeding on the exhausted claims, the undersigned **RECOMMENDS** that Johnson's response be deemed a request to withdraw his unexhausted claim, and the same be granted. Accordingly, the undersigned now proceeds to the merits of Johnson's exhausted claims.

## B. Ineffective Assistance of Counsel

When a petitioner brings an ineffective assistance of counsel claim, counsel's conduct is measured under the two part analysis in Strickland v. Washington, 466 U.S. 668 (1984). "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment." Id. at 687. "'Deficient performance' is not merely below-average performance; rather, the attorney's actions must fall below the wide range of professionally competent performance." Griffin v. Warden, Maryland Corr. Adj. Ctr., 970 F.2d 1355, 1357 (4th Cir.

1992).

Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. In order to demonstrate prejudice, the defendant must show that but for his attorney's errors, the result of the proceeding would have been different. Strickland, 466 U.S. at 687. Error by counsel which falls short of the constitutional ineffectiveness standard does not constitute cause, notwithstanding that the error may arise from inadvertence, ignorance or strategic choice. Murray v. Carrier, 477 U.S. 478 (1986); Griffin v. Aiken, 775 F.2d 1226 (4th Cir. 1985) cert. denied, 478 U.S. 1007 (1986).

When reviewing claims of ineffective assistance under § 2254(d), as modified by the Anti-Terrorism and Effective Death Penalty Act (AEDPA),

> [t]he pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.

Harrington v. Richter, 131 S. Ct. 770, 785 (2011) (internal citation omitted). Section 2254, as amended by the AEDPA, is meant to be a high bar because it deals with claims that have already been litigated in state court. Id. at 786. Accordingly, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. (citing Lockyer v. Andrade, 538 U.S. 63, 71 (2003)). With this standard in hand, the Court will now look to the Johnson's two exhausted

allegations regarding ineffective assistance of counsel.

First, Johnson alleges that his counsel was ineffective for failing to offer the lesser included offense of larceny. The undersigned notes that in West Virginia, to "support a conviction for larceny at common law, it must be shown that the defendant took and carried away the personal property of another against his will with the intent to permanently deprive him of the ownership thereof." State v. Neider, 170 W.Va. 652, 667, 295 S.E.2d 902, 907. (1982). To maintain a charge of robbery at common law, the same elements of larceny are required, but with the inclusion of two additional elements: "[t]he taking has to be by force or putting the person in fear. Id. Therefore, in West Virginia, larceny is a lessor included offense of robbery. However, "where there is no evidentiary dispute or **insufficiency of the elements of the greater offense** which are different from the elements of the lessor included offense, then the defendant is not entitled to a lessor included offense instruction. Id. at 906. (Emphasis added).

In the instant case, in reaching their verdict, the jury answered a special interrogatory that "Beyond a reasonable doubt[,]...[Johnson] used, presented[,] and/or brandished a firearm during the commission of a crime." [4] Noting the jury's response to the special interrogatory, the WVSCA concluded that the Johnson's claim regarding counsel's failure to submit an instruction on the lessor included offense of larceny was without merit because he could not prove that the outcome of the trial would have been different if counsel had offered the larceny instruction. (Doc. 15-1, p.5).

In answering the special interrogatory, the jury expressly found beyond a reasonable doubt that Johnson used, presented, or brandished a firearm during the commission of a crime. This

---

[4]1.    The jury was instructed to answer te special interrogatory "only if you find [Johnson] guilty of the felony offense of robbery in the first degree as [a] principal in the first degree and not as an aider and abettor." (Doc. 15-11, p. 3).

finding is supported by the evidence at trial. The victim identified Johnson and stated that Johnson revealed a weapon after taking the cash. While Johnson makes much of the fact that any brandishing of a weapon was after he allegedly took the cash, the victim's testimony indicated that after seeing the weapon he drove off rather than attempt to get his money back from Johnson. (Doc. 15-13, pp 31-33). Accordingly, the Johnson cannot satisfy the second prong of Strickland, as there is not a substantial likelihood of a different result had trial counsel requested an instruction on the lessor included offense of larceny. Therefore, in rejecting this ground, the WVSCA did not apply federal law in an unreasonable manner, and this claim should be dismissed.

Johnson's second exhausted claim with regard to ineffective assistance of counsel stems from counsel's decision not to impeach the victim with what Johnson believes are inconsistent pretrial statements. The facts presented at trial centered on the testimony of the victim. The victim testified that he stopped his vehicle while driving in Wheeling when he was flagged down by two males, one of whom was Johnson. (Doc. 15-13, p. 26). The victim further testified that Johnson then opened his car door and sat down in the passenger seat. (Doc. 15-13, p. 27). Johnson then asked to borrow $5, to which the victim replied he did not have any money. (Id.). The victim further testified that the second individual walked to the driver's side of the car, prompting the victim to lock his door. (Doc. 15-13, p. 29). He then noticed that Johnson had picked up a banker envelope from the car console that contained cash. (Doc. 15-13, pp. 28, 30). He further testified that as he reached for Johnson, the second individual stuck a gun down in the window and said "give me all your effing money." (Doc. 15-13, p. 30). Johnson then exited the car, according to the victim, and pulled open

his jacket to reveal a gun. (Id.). The victim testified he then "dumped[5] the clutch and took off." (Doc. 15-3, p. 32). Finally, he testified that as he took off, he heard shots being fired and felt something hit his leg. (Id.).

In his appeal of his habeas denial, Johnson claimed there were inconsistencies between the victim's pretrial statements and his trial testimony as to which side of the car Johnson and the other individual were on during the robbery as well as inconsistencies regarding whether Johnson had a gun. More specifically, Johnson notes that the victim gave a statement to the Wheeling Police Department on July 13, 2001, that indicated the following:

> ...A tall light skinned black male [Johnson] opened the passenger door and asked him if he had $5.00. [Johnson] then sat down in the car with his feet still out on the street. [Victim] told [Johnson] he didn't have any money, but he had forgotten that he had [a] bank envelope lying in the center console of his vehicle. The envelope from Wheeling National Bank contained $480.00. [Johnson] grabbed the envelope and exited the vehicle. At this time another subject walked behind [the victim's] vehicle to approach the driver's side. This subject was a dark skinned black male with a hood pulled up hiding his face. [Johnson] that had the envelope of money then pulled a small semi-automatic pistol and the other subject on the driver's side pulled out a large older looking revolver. The subject on the driver's side went to stick a gun in the window and [the victim] took off....

(Doc. 15-7, pp. 9-10). Johnson maintains that this statement is inconsistent with the trial testimony in which the victim testified that the second individual went from the driver's side to the passenger side before he stuck the gun in the window.[6] (Doc. 15-6, pp. 20-21). In addition, Johnson maintains that in his pretrial statement, the victim stated that Johnson had already taken the money and exited

---

[5]The undersigned assumes that the victim actually said "jumped the clutch," and the court report either misunderstood him or committed a typographical error.

[6]In fact, on direct examination, the victim testified that the second individual remained on the driver's side. However, on cross-examination, he testified that he was on the passenger side where the Johnson had gotten out. (Doc. 15-3, p. 50).

the vehicle as the second individual walked behind the victim's vehicle to approach the driver's side. Johnson argues that these inconsistencies would demonstrate that he and the second individual were not acting in concert. (Doc. 15-6, p. 22).

Johnson also argues that a pretrial statement from the victim given to a doctor should have been used to impeach the victim as whether he had a gun. In his appeal, Johnson set forth the following pretrial statement, as interpreted by the doctor,:

> This 36 year old white male presents 2 Ohio Valley Medical Center after being shot between 1 and 2 a.m., yesterday. He was shot in the right thigh. He states he picked up an individual to give him a ride home, the individual asked for some money and then he was flagged down by another individual who put a gun to his head while the other person took his money. He then sped off in the car and the individual with a gun shot at his car five times and he was struck in the right lateral thigh and had a bullet graze his right shoulder. He denies any numbness, parenthesis, fevers, chills or discharge. He denies any abdominal pain. He denies any other complaints. He has been ambulatory since the accident.[7]

(Doc. 15-6, p. 23).

In denying Johnson's habeas appeal, the WVSCA reviewed the statements and the relevant portions of the trial transcript. The WVSCA acknowledged that the statements and trial testimony did not match each other word for word, but they were not inconsistent. The WVSCA then went on to note that counsel did question the victim to clarify whether the other individual was on the driver's side of his vehicle or on the passenger's side where Johnson was. In addition, on cross-examination, the victim testified, as he did on direct and redirect examination, that Johnson had a gun. After careful consideration, the WVSCA found that the plaintiff's allegation regarding ineffectiveness of counsel in failing to impeach the victim was insufficient to entitle Johnson to relief. Nothing in the

---

[7]Although the Johnson refers to this statement as Exhibit F in his appeal to the WVSCA, the record before this Court does not appear to contain this statement.

Johnson's pending habeas pursuant to 28 U.S.C. § 2254 has established that this conclusion is contrary to federal law, as established by Strickland, and therefore, it does not establish a basis for the award of relief from this court.

## C. Sufficiency of the Evidence

Johnson maintains that there was insufficient evidence to support his conviction. While claims regarding the sufficiency of evidence are cognizable in a federal habeas petition, Jackson v. Virginia, 443 U.S. 307 (1979), Johnson bears the burden of demonstrating that "after viewing the evidence in the light most favorable to the prosecution, [no] rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319. In reviewing the evidence, the Court must defer to the jury's determination of a witness' credibility and presume that the jury resolved any conflicts in the evidence in favor of the prosecution. See Wright v. West, 505 U.S. 277, 296 (1992).

The WVSCA, after reviewing the trial transcript, and considering the jury's finding and its answer to the special interrogatory, found that the victim's testimony alone was sufficient to establish all the elements of first-degree robbery. This court has reviewed the evidence in the light most favorable to the prosecution and determined Johnson has failed to demonstrate no rational jury could have found him guilty of the offense charged. See Jackson, 443 U.S. at 319. To the contrary, there existed substantial testimony from the victim which identified Johnson, stated that Johnson revealed a weapon after taking his paycheck, and the jury clearly found this evidence credible. Therefore, Johnson cannot establish that the decision by the WVVSCA was contrary to, or an unreasonable application of, clearly established federal law, and his claim regarding the sufficiency of the evidence fails to establish a claim for relief from this court.

18

**D. Burden of Proof**

Johnson's remaining exhausted claim is that the court lowered the burden of proof by instructing the jury that he did not have to have the same criminal intent as the main perpetrator of the robbery. The instruction about which Johnson complains is in regard to the criminal intent of an aider and abettor. The entire instruction given by the trial court was as follows:

> The offense charged in the indictment in this case is robbery in the first degree. One of two verdicts may be returned by you under this count of the indictment. They are guilty of robbery in the first degree and not guilty.

> Robbery in the first decree is committed when any person commits or attempts to commit robbery by using the threat of deadly force by the presentment of of firearms or other deadly weapon.

> Before the defendant, Brandon Johnson, can be convicted of robbery in the first degree, the State of West Virginia must overcome the presumption that the defendant, Brandon Johnson,  is innocent and prove to the satisfaction of the jury beyond a reasonable doubt that the defendant, Brandon Johnson, in Ohio County, West Virginia, on or about the 13th day of July, 2001, did take from the person or presence of Todd McAllister, against his will, $480 in US currency in the care, custody, control, management or possession of Todd McAllister by presenting a firearm with the intent to permanently deprive Todd McAllister thereof.

> If, after impartially considering, weighing and comparing all the evidence, both that of the State and that of the defendant, the jury and each member of the jury is convinced beyond a reasonable doubt of the truth of the charge as to each of these elements of robbery in the first degree, you may find Brandon Johnson guilty of robbery in the first degree as charged.

> If the jury and each member of the jury has a reasonable doubt of the truth of the charge as to any one or more of these elements of robbery in the first degree, you may find the defendant, Brandon Johnson, not guilty.

> The Court instructs the jury that a person who is the absolute perpetrator of a crime is a principal in the first degree. The court further instructs the jury that a person who is actually or constructively present at the scene of a crime at the same as a criminal act of the absolute perpetrator who acts which shared criminal intent contributing to the criminal act of the absolute perpetrator is an aider and abettor

and is known as a "principal in the second degree" and, as such, may be criminally liable for the criminal act as if he were the absolute or sole perpetrator of the crime.

Actual physical presence at the scene of a criminal act is not necessary where the aider and abettor was constructively present at a convenient distance at the time and place of the criminal act.

However, you are cautioned than merely witnessing a crime without intervention they are in does not make a person a party to its commission unless his interference was a duty and his noninterference was designed by him and operated as an encouragement to or protection of the absolute perpetrator of the criminal act.

The intent element is relaxed where there is evidence of substantial physical participation in the crime by the accused. Substantial, physical participation by a person charged as an aider and abettor in a criminal undertaking constitutes evidence from which a jury may properly infer an intent to assist the principal criminal actor.

Therefore, whether the defendant, Brandon Johnson, in this case actually wished to rob Tom McAllister is irrelevant. It is not necessary to prove that the defendant, Brandon Johnson, actually conversed with the other participate concerning any type of criminal act upon the victim. It is enough if the actions of the defendant, Brandon Johnson, show his present agreement to participate in the crime alleged in the indictment.

(Doc. 15-13, pp. 136-140).

The WVSCA determined that by answering the special interrogatory, the jury found Johnson "guilty of the felony offense of robbery in the first degree as [a] principal **and not as an aider and abettor**." (Emphasis supplied by the WVSCA). (Doc. 15-11, p.4). Because the jury did not find the Johnson guilty on the aiding and abetting theory, the WVSCA found any error in instructing on that issue was harmless beyond a reasonable doubt.

"The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater

than the showing required to establish plain error on direct appeal. The question in such a proceeding is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process,' not merely whether 'the instruction is undesirable, erroneous, or even 'universally condemned.'" Henderson v. Kibbe, 431 U.S. 145, 154 (1977)(internal citations omitted). Here, even if the instruction was erroneous in regard to the required criminal intent for conviction of an aider and abettor, it did not contribute conclusively to the jury verdict which explicitly rejected an aider and abettor theory. Instead, the jury found Johnson guilty of first degree robbery as a principal in the first degree. Because the error complained of did not contribute to the verdict obtained, there is no constitutional error. *See* Mitchell v. Esparza, 540 U.S. 12, 17-18 (2003)(citations omitted)("A constitutional error is harmless when "it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained."). Therefore, this claim also fails to state a ground for relief in a § 2254 petition.

## VI. CONCLUSION & RECOMMENDATION

The Court finds that the state decision in Johnson's case was not contrary to, or an unreasonable application of, clearly established federal law. Further, the state court did not base its decision on an unreasonable application of the facts. Thus, Johnson is not entitled to habeas relief under § 2254. Accordingly, the undersigned recommends that Respondent's Motion for Summary Judgment (Doc. 15) be **GRANTED** and the habeas petition be **DISMISSED** with prejudice.

Any party may, within fourteen [14] days of the filing of this recommendation, file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable Gina M.Groh, United States District Judge. Failure to timely file objections to this

recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985): United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is directed to mail a copy of this Report and Recommendation to the pro se petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet, and to counsel of record via electronic means.

DATED July 8, 2014

s/ *John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE